# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

JUNE E. FIOLA,

    Plaintiff,

v.

VALIC FINANCIAL ADVISORS, INC., et al.,

    Defendants.

Case No. 2:19-CV-02777-HLT-JPO

## MEMORANDUM AND ORDER

Plaintiff June Fiola has sued her former employer under Title VII, the Age Discrimination in Employment Act, the Americans with Disabilities Act, and Kansas state law. Her former employer—a group of companies collectively referred to here as VALIC[1]—has filed a motion to compel arbitration. Doc. 9. VALIC argues that Fiola agreed to resolve disputes arising out of her employment by mediation or arbitration through its Employee Dispute Resolution ("EDR") program. Fiola denies that she entered into any such agreement. For the reasons discussed below, the Court finds that Fiola entered into an arbitration agreement and that this case should be stayed pending arbitration. But, although close, the Court declines to award fees to VALIC.

## I. BACKGROUND

Fiola worked for VALIC from 2007 through 2011. Fiola was re-hired by VALIC beginning September 3, 2012. Doc. 10-1 at 2; Doc. 14-1 at 1. On her application for re-employment, Fiola acknowledged a statement that certain AIG affiliates and subsidiaries had adopted an EDR program, "which includes both informal and formal means such as arbitration, as the sole method

---

[1] Specifically, Defendants are VALIC Retirement Services Company, VALIC Financial Advisors, Inc., and The Variable Annuity Life Insurance Company ("VALIC"). The former two are wholly owned subsidiaries of VALIC, which was Fiola's employer. At all relevant times, VALIC and its subsidiaries were part of AIG's Life and Retirement division. Doc. 10-1 at 2-3.

of resolving most employment-related disputes." Doc. 10-1 at 11. At the time of her re-application, VALIC was part of AIG Life and Retirement, which was not listed on the application as an AIG subsidiary that had adopted the EDR program. But, on November 6, 2012, shortly after Fiola was hired, AIG Life and Retirement offered the EDR program to its employees, including Fiola as a VALIC employee. *Id.* at 3.

Specifically, on November 6, 2012, Fiola received an email with the subject line "Employee Dispute Resolution Program." *Id.* at 26. The email was from "the Desk of Jay Wintrob." The "To" line lists "Fiola, June." *Id.* The email directed recipients to view an embedded video "about an important new resource—Employment Dispute Resolution—available to all AIG Life and Retirement employees." *Id.* The email further stated, "It is important that you review the Employment Dispute Resolution materials located on Talent Connection as soon as possible in order to learn more about this program and the window for consideration, which begins today." *Id.* As indicated in the email, the EDR "Program Description & Arbitration and Mediation Rules" were available on VALIC's Talent Connection employee portal. Doc. 10-1 at 3, 13-24. That document described the EDR program and explained that it went into effect January 1, 2013, and that "continued employment after the Effective Date of this Program constitutes consent by both the Employee and the Company to be bound by this program" unless the employee declined coverage by January 8, 2013. *Id.* at 13. The document further stated that "All Disputes not otherwise settled by the Parties shall be finally and conclusively resolved through arbitration under the program, which provides the exclusive, final and binding method by which Disputes are resolved." *Id.* at 15.

Another email was sent to Fiola on December 5, 2012. The text of the email was addressed to "JUNE FIOLA" and the subject line was "AIG Life and Retirement EDR Program training

2

reminder." *Id.* at 29. That email included a reminder about the November 6 email and stated, "You are expected to complete the training by December 28th." *Id.* (emphasis in original). But it also stated that "[w]hether the training is taken or not, all employees of AIG Life and Retirement will be covered under the AIG Life and Retirement EDR Program unless they take action to decline participation." *Id.* (emphasis in original). The email then listed step-by-step instructions on how to access the training in Talent Connection, and steps to take to decline participation in the EDR program. *Id.* The email further stated that "Employees who do not complete this task [to decline participation] will automatically be covered under the AIG Life and Retirement EDR Program effective January 1, 2013. *Id.* Fiola did not decline participation in the EDR program. *Id.* at 5.

Another email was sent to Fiola on March 28, 2013, confirming coverage under the EDR program. *Id.* at 31. A fourth email sent on November 27, 2013, explained that the AIG Life and Retirement EDR program was merging with the AIG EDR program. *Id.* at 33. It explained that there were no substantive changes and that employee participation will continue automatically unless the employee previously declined participation. *Id.* There is no record indicating that Fiola raised any concerns or had any questions about the program at any time. *Id.* at 5.

VALIC contends the emails were "retrieved from Fiola's email inbox" and none generated any automated reply indicating they were not delivered successfully. *Id.* Fiola contends she had never seen the EDR "Program Description & Arbitration and Mediation Rules" until her attorney showed her a copy after her termination. Doc. 14-1 at 1. She contends she has no recollection of receiving any of the emails discussed above, and that she never read them before her termination or watched any training video about the EDR program. *Id.* at 1-2. She contends she was never provided the AIG Employee Handbook and never reviewed it on the company's intranet. *Id.* at 2. She claims she was never mailed a hard copy of the EDR program or any arbitration agreement,

was never "verbally" informed about the EDR program or any arbitration agreement, and never signed or verbally agreed to be bound by the same. *Id.* She also contends that her work computer crashed in 2017, and as a result, she lost all archived emails from 2012 and 2013. *Id.* at 3.

## II. STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, broadly applies to written arbitration agreements in "a contract evidencing a transaction involving commerce."[2] 9 U.S.C. § 2. It provides that such agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* The FAA evidences "a liberal federal policy favoring arbitration agreements," and questions of arbitrability must be resolved with this policy in mind. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). To that end, the FAA permits a court to stay a matter and order arbitration where an agreement requires it. *See* 9 U.S.C. §§ 3-4.

Arbitration is a question of contract, and "[n]o party can be compelled to submit a dispute to arbitration without having previously agreed to so submit." *Bolden v. AT & T Servs., Inc.*, 350 F. Supp. 3d 1029, 1031 (D. Kan. 2018). In the context of a motion to compel arbitration, the party seeking to enforce arbitration bears the initial burden of establishing that arbitration is compelled, similar to a summary-judgment standard. *See Phox v. Atriums Mgmt. Co.*, 230 F. Supp. 2d 1279, 1282 (D. Kan. 2002). That party "must present evidence which is sufficient to demonstrate an enforceable agreement to arbitrate." *Id.* If that showing is made, the burden shifts to the opposing party to demonstrate a genuine issue of fact exists. *Id.*

---

[2] Employment contracts are generally covered by the FAA. *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) ("Employment contracts, except for those covering workers engaged in transportation, are covered by the FAA.").

4

As in summary-judgment proceedings, "[a] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests." *Perkins v. Rent-A-Ctr., Inc.*, 2004 WL 1047919, at *1 (D. Kan. 2004) (quoting *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002)). Where there is no material dispute about the facts regarding the existence of an agreement to arbitrate, a district court can decide as a matter of law that arbitration is proper. *Bolden*, 350 F. Supp. 3d at 1031. Otherwise, a trial on the existence of an agreement to arbitrate is required. *Id.*

### III. ANALYSIS

Whether to grant VALIC's motion to compel arbitration is a two-step inquiry. First, the Court must determine whether an agreement to arbitrate exists. Second, the Court must determine if the allegations in the complaint are within the scope of the agreement. *See Cavlovic v. J.C. Penney Corp.*, 884 F.3d 1051, 1057 (10th Cir. 2018). Fiola does not dispute that her claims in this lawsuit are ostensibly covered under the arbitration agreement. She only disputes that there is any such agreement. Doc. 14 at 5.[3] Accordingly, the Court focuses on that issue.

#### A. **VALIC has provided evidence of an arbitration agreement.**

Although Fiola details the traditional elements of a contract, she acknowledges that arbitration agreements in the employment context may be formed when an employer provides "adequate notice of the offer to plaintiff and a meaningful opportunity to reject that offer." *Bolden*, 350 F. Supp. 3d at 1034; *see also* Doc. 14 at 7. Based on a review of the evidence submitted, including the emails cited by VALIC, the Court concludes that VALIC has met its burden of

---

[3] Although not directly addressed by either party, the Court notes that threshold issues of arbitrability are typically handled by the arbitrator where a delegation provision is included or invoked. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010); *Weishaar v. Wells Fargo Bank, N.A.*, 2018 WL 4189696, at *3 (D. Kan. 2018). Here, however, Fiola challenges the very existence of the arbitration agreement itself, which is a question for a court to decide. *See Vulcan Coal & Min., LLC v. Bulk Trading S.A.*, 2013 WL 1346604, at *6 (N.D. Ala. 2013).

showing that Fiola was provided adequate notice of the EDR program (including its arbitration component) and given a meaningful opportunity to opt out.

Specifically, Fiola's employment application put her on notice that several AIG components had adopted EDR programs, which included arbitration as the sole means of dispute resolution. Doc. 10-1 at 11. Shortly after she was hired, Fiola was sent an email with the subject line "Employment Dispute Resolution Program," was told to watch a video "about an important new resource—Employment Dispute Resolution," and was told it was "important that [she] review the Employment Dispute Resolution materials located on Talent Connection as soon as possible in order to learn more . . . ." *Id.* at 26. Although this email did not use the word "arbitration," this email put Fiola on notice that VALIC was adopting a new dispute-resolution program for employees, and she should have been aware—through the acknowledgment on her job application—that AIG's EDR programs included arbitration as the sole means of resolving employment disputes. And the EDR program materials referenced in the email clearly explained as much. *Id.* at 15 ("All Disputes not otherwise settled by the Parties shall be finally and conclusively resolved through arbitration under the Program . . . .").

Fiola was again reminded a month later to educate herself about the EDR program because it would apply to her unless she acted to decline participation. *Id.* at 29. Detailed steps for how to complete the optional training and how to decline coverage were provided. *Id.* But Fiola never opted out. *Id.* at 5. Fiola never took any action even after follow-up emails confirmed her participation in the EDR program. *Id.*

Based on this evidence, the Court finds that VALIC has presented sufficient evidence to demonstrate an enforceable agreement. *See Phox*, 230 F. Supp. 2d at 1282. The burden then shifts

to Fiola to demonstrate that a genuine issue exists for trial on the question of the existence of an agreement. *Id.* Having reviewed the arguments in her response, Fiola has not met that burden.

### B. Fiola has not presented evidence that suggests she did not receive the emails.

Fiola first argues that she "disputes that she ever received any of the EDR Program emails." Doc. 14 at 7 (heading). But "[a] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests." *Perkins*, 2004 WL 1047919, at *1 (quoting *Tinder*, 305 F.3d at 735). Instead, she must come forward with evidence that creates a factual dispute about whether she was offered an agreement to arbitrate. The only evidence Fiola cites is her affidavit, which only states that she has "no recollection of receiving any of the four emails." Doc. 14-1 at 1 (emphasis added).[4] Not remembering and not receiving are two different things. And not remembering receipt does not create a triable issue of fact as to whether she in fact did receive them. *See Tinder*, 305 F.3d at 735-36 (stating that a plaintiff's affidavit stating that she does not remember receiving or reviewing a brochure about arbitration does not raise a genuine issue over whether the brochure was actually sent to her).[5]

Fiola contends in her affidavit that her computer crashed in 2017 and that she was told all emails from 2012 and 2013 were lost. Doc. 14-1 at 3. She argues that the emails cited by VALIC in the motion would therefore not have existed in her inbox after 2017. *Id.* But even if the Court accepts that statement as true, it does not help Fiola. First, and most obviously, if the emails were

---

[4] Fiola's complaint alternatively states that she "does not believe she ever received" the emails or that she "either never saw the alleged emails or did not realize at the time of any alleged November 2012 email or the December 'Reminder Email' that they contained any alleged binding arbitration agreement." Doc. 1 at ¶¶ 53-54. But Fiola's complaint, which is not verified, is not evidence. And as discussed above, Fiola's affidavit only states that she does not recall receiving the emails.

[5] Fiola also contends that she was never handed a hard copy of the EDR program materials, she never signed any agreement, and no one ever mentioned an arbitration agreement in a conversation. Doc. 14-1 at 2; *see also* Doc. 14 at 7. But VALIC does not contend that any agreement was formed via those methods, nor is there any requirement that those methods be used. *See, e.g.*, *Tinder*, 305 F.3d at 736 ("Although § 3 of the FAA requires arbitration agreements to be written, it does not require them to be signed.").

lost from her inbox in 2017, then she did receive them. Second, to the extent Fiola seeks to challenge the authenticity of the emails cited by VALIC, the Court notes that she never actually does so. Third, how the emails were retrieved is not a material issue where Fiola has not sufficiently disputed that they were received.

  C.  **The emails and other documents provided Fiola with adequate notice.**

Fiola next argues that the emails did not provide adequate notice of an offer because the emails did not use certain words "that would provide such notice, for example: arbitration, agreement, binding, accept, offer, contract, opt-out, access to court or jury trial . . . ." Doc. 14 at 9-10. Notably, Fiola cites no authority that any of those magic words are required.[6] Nor can the Court conclude that the language used was too vague. The emails clearly referenced and "Employee Dispute Resolution" program. That sufficiently put Fiola on notice what was at stake, especially when considered in conjunction with Fiola's employment application, which explained that the EDR program required arbitration as the sole method of resolving most employment-

---

[6] Although Fiola does not cite any authority to suggest that certain language is required to manifest an offer of an arbitration agreement, she does attempt to distinguish or rely on certain cases. Doc. 14 at 11-15. But none of those arguments are persuasive to her cause. First, she argues that the notice in *Bolden* more obviously referred to arbitration and was sent with more reminders. Doc. 14 at 11-12. But *Bolden* did not hold that such language was required to create adequate notice. And as VALIC notes, other courts have enforced arbitration agreements formed under similar circumstances as here. *See Garcia-Clara v. AIG Ins. Co. P.R.*, 2016 WL 1261058, at *2-*6 (D.P.R. 2016). Second, the Missouri Court of Appeals case that Fiola argues is persuasive, Doc. 14 at 13, largely turned on the fact that the arbitration agreement at issue was never "offered" by the employer because the employee was not allowed to accept or reject it. *Jackson v. Higher Educ. Loan Auth.*, 497 S.W.3d 283, 290 (Mo. Ct. App. 2016) ("There appears to be no consequence for an employee's failure or refusal to sign the Acknowledgement of Receipt; the ADR Policy will apply to an employee regardless of his or her execution of the Acknowledgement of Receipt."). Though the court noted the employer's "linguistic smokescreen," it did "not attempt to insinuate said terms are indispensable so as to form a contract." *Id.* at 289. Here, by contrast, Fiola was given the option to decline participation in the EDR program but failed to do so. *See, e.g.*, Doc. 10-1 at 5, 29; *see also Bolden*, 350 F. Supp. 3d at 1034-35 (noting that failure to opt out and continued employment are acceptance of offer). Finally, Fiola argues that *Pullam v. Apria Healthcare, LLC*, 2018 WL 5013521 (D. Kan. 2018), should govern this case. Doc. 14 at 13-15. In *Pullam*, there was a factual dispute about whether the plaintiff had completed a training course on the company's arbitration policy. *See Pullam*, 2018 WL 5013521, at *7. But there, the training course was the source of notice to the employee, *see id.* at *3, unlike in this case where the training course was optional and notice was provided via the emails. In other words, unlike in *Pullam*, whether Fiola completed the training here is not a material fact.

related disputes. Doc. 10-1 at 11.[7] The Court concludes that emails about the EDR program provided Fiola with adequate notice about the nature of the EDR program. That Fiola apparently failed to investigate further or take any action despite warnings that she would be covered by the EDR program does not establish lack of adequate notice.

> **D.** **Fiola had a meaningful opportunity to opt out.**

Fiola finally argues that VALIC did not provide a meaningful chance to opt out because the deadline to complete the optional training was December 28, and the arbitration went into effect on January 1. Doc. 14 at 17-20. This argument is not persuasive. First, it ignores that Fiola was first notified about the EDR program and the "window of consideration" on November 6—roughly two months before the effective date. Doc. 10-1 at 26. Although that email did not, on its face, state the deadline to opt out, it stated that it "is important that you review the Employment Dispute Resolution materials located on Talent Connection as soon as possible in order to learn more about this program <u>and the window for consideration, which begins today</u>." *Id.* (emphasis added). The materials referenced clearly stated the EDR program was "Effective January 1, 2013" and that "**Employment or continued employment after the Effective Date of this Program constitutes consent by both the Employee and the Company to be bound by this Program, both during employment and after termination of employment, unless the Employee declined coverage on or prior to January 8, 2013**." Doc. 10-1 at 13 (emphasis in original). Thus, Fiola had notice as early as November 6 that she had a decision to make and that January 8 was the deadline.

---

[7] Fiola argues that this statement in her application only put her on notice that she was <u>not</u> subject to any EDR program or arbitration agreement because she was not applying for any of the entities listed on the application. Doc. 14 at 16-17. But while it is undisputed that VALIC did not have an EDR program when Fiola was hired, that statement in the application still arguably put Fiola on notice that EDR programs may be adopted (as they were shortly after Fiola returned to work at VALIC) and that a key feature of any such program is arbitration.

The December 5 email did state that employees were expected to complete the training on the EDR program by December 28. *Id.* at 29. But it also stated that all employees will be covered effective January 1 "unless they take action to decline participation" and regardless of "[w]hether the training is taken or not." *Id.* There is simply no plausible reading of this that suggests the opt-out period was just from December 28 until January 1.[8] A plaintiff cannot decline to read emails until right before the deadline and then complain that there was not enough time to decide, any more than they can ignore emails and claim they never had notice of the offer to begin with. *See Bolden*, 350 F. Supp. 3d at 1036; *see also Tinder*, 305 F.3d at 735-36.[9]

In sum, the Court finds that Fiola has failed to present sufficient evidence that would create a genuine dispute of whether she had "adequate notice of the offer . . . and a meaningful opportunity to reject that offer." *Bolden*, 350 F. Supp. 3d at 1034. Accordingly, this matter must be stayed pending arbitration of Fiola's claims.

### E. The Court declines to award attorneys' fees or costs.

Finally, VALIC requests that the Court order Fiola to pay its fees and costs associated with bringing the motion to compel arbitration. Doc. 10 at 16. Federal courts have the inherent power to award fees, but typically it is only done in exceptional cases. *See Mountain W. Mines, Inc. v. Cleveland-Cliffs Iron Co.*, 470 F.3d 947, 953-54 (10th Cir. 2006). In the context of a motion to compel arbitration, an award of fees may be appropriate if the party opposing arbitration had no legitimate basis to do so. *Local Union No. 13417 of the United Steel Workers v. Kan. Gas Serv.*

---

[8] The deadline to opt out was actually January 8. Doc. 10-1 at 13. The Court acknowledges some confusion on this point, given the "effective date" of January 1 referenced in the December 5 email. But that confusion is not significant here because Fiola never attempted to opt out by either date.

[9] Fiola also argues that the "the terms of the offer are contained in the video," which she never watched, and thus there exists a disputed question of fact. Doc. 14 at 20-22. Although this argument is not entirely clear, the Court notes that it has already concluded that the <u>emails</u> contained the offer, and that the completion of the optional training is not material.

*Co.*, 2012 WL 3025085, at *1 (D. Kan. 2012); *see also Chauffeurs, Teamsters & Helpers, Local Union No. 765 v. Stroehmann Bros. Co.*, 625 F.2d 1092, 1094 (3d Cir. 1980) ("In suits to compel one party to submit to arbitration or abide by an award, fees are generally awarded if the defaulting party acted without justification . . . or if the party resisting arbitration did not have a reasonable chance to prevail." (internal citations and quotations omitted)); *Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, 483 F. App'x 634, 635 (2d Cir. 2012) ("An award of sanctions under the court's inherent power is proper when a party advances a claim lacking colorable basis and does so in bad faith.").

Here, although the Court concludes that Fiola entered into an agreement to arbitrate, Fiola's position in response to the motion to compel was not entirely lacking a colorable basis. *See Local Union No. 13417*, 2012 WL 3025085, at *1 (declining to award fees where a non-prevailing party, "through its counsel, presented arguments in opposition to arbitration that a reasonable and zealous advocate could be expected to present on behalf of a client"). Further, the email exchanges between the parties before this lawsuit, although notably silent on the legal arguments advanced now by Fiola, do not demonstrate any bad faith on Fiola's part. *See generally* Doc. 10-2. Accordingly, the Court exercises its discretion in this case and concludes that each party should bear its own costs related to this motion.

## IV. CONCLUSION

THE COURT THEREFORE ORDERS that VALIC's Motion to Compel Arbitration, Stay this Action, and for an Award of Fees (Doc. 9) is GRANTED IN PART and DENIED IN PART. To the extent VALIC requests arbitration and a stay of this case, the Court COMPELS arbitration and STAYS this case pending arbitration of the dispute. VALIC's request for an award of fees is DENIED.

THE COURT FURTHER ORDERS that the parties shall file a status report notifying the Court when the matter is resolved, or otherwise by October 9, 2020, whichever is earlier.

IT IS SO ORDERED.

Dated: April 8, 2020

/s/ *Holly L. Teeter*
HOLLY L. TEETER
UNITED STATES DISTRICT JUDGE